UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARA KATLYN JADE,

                Petitioner,                        Case No. 2:13-cv-10149

v.                                          Honorable Patrick J. Duggan

DEBRA SCUTT,

                Respondent.

_____/

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY**

Mara Katlyn Jade ("Petitioner"), a prisoner formerly in the custody of the

Michigan Department of Corrections, seeks the issuance of a writ of habeas corpus

pursuant to 28 U.S.C. § 2254.[1]  In her pro se application, filed on January 15, 2013,

---

[1]The Michigan Department of Corrections's Offender Tracking Information System ("OTIS"), which this Court is permitted to take judicial notice of, *Ward v. Wolfenbarger*, 323 F. Supp. 2d 818, 821, n.3 (E.D. Mich. 2004), indicates that Petitioner was discharged from her sentence on August 28, 2015 and is no longer in custody.  The language of §§ 2241(c)(3) and 2254(a) require that a habeas petitioner be "in custody" under the conviction or sentence under attack at the time a habeas petition is filed in federal court.  *Maleng v. Cook*, 490 U.S. 488, 490-91, 109 S Ct. 1923, 1924-25 (1989).  Thus, the custody requirement is satisfied for purposes of the habeas statute if the petition is filed while the petitioner is in custody, even if they are subsequently released.  *Sevier v. Turner*, 742 F.2d 262, 268 (6th Cir. 1984).  Once federal jurisdiction has attached to a habeas petition in federal district court, "it is not defeated by the release of the petitioner prior to

Petitioner challenges her conviction for assault with intent to do great bodily harm less than murder, in violation of Michigan Compiled Laws §750.84, alleging that her trial was infected by errors of constitutional magnitude.[2]   At trial, Petitioner invoked the defense of self-defense, which the jury ultimately rejected as evidenced by the return of a guilty verdict.   Subsequent to the trial, the state court sentenced Petitioner as a fourth habitual offender, Michigan Compiled Laws § 769.12, to a term of incarceration ranging from five to twenty years.

For the reasons stated herein, the Court will deny Petitioner's application for writ of habeas corpus.   The Court will also decline to issue a certificate of appealability.

## I.   BACKGROUND

Petitioner was convicted following a jury trial in the Oakland County Circuit Court, located in southeastern Michigan.   The events leading to her conviction are set forth briefly below.

---

completion of proceedings" on his or her habeas application.   *Carafas v. LaVallee*, 391 U.S. 234, 238, 88 S. Ct. 1556, 1560 (1968).

Because Petitioner was serving her sentence when she filed the instant petition, she satisfies the "in custody" requirement of §§ 2241(c)(3) and 2254(a), despite her subsequent discharge.

[2]Petitioner is a transgender individual and will be referred to by feminine pronouns because she identifies as female.

2

On November 17, 2007, thirteen-year-old "C.O." called thirty-one-year-old Paul Whorton, inviting him to come to her mother's apartment for a social gathering. (2/14/08 Trial Tr. 120-22, 258.) Whorton arrived at the apartment with his fourteen-year-old nephew, "D.J.," and a friend named Trever sometime after 9:00 p.m. (*Id.* at 122.) C.O.'s mother Tammy Flynn, C.O., and Petitioner were present when Whorton and the others got to the apartment. (*Id.* at 123, 214.) Whorton began drinking before arriving at the apartment and continued drinking with those of legal age upon his arrival. (*Id.* at 178.)

According to Whorton's trial testimony, several hours after he arrived to Flynn's, C.O. and Flynn began to argue outside, at which point C.O. ran out of her mother's sight. Flynn returned to the apartment and indicated that C.O. had run away. (*Id.* at 125-27.) Whorton went outside to locate C.O., and found her inside of Flynn's vehicle. The two sat inside of the vehicle for approximately one hour, with Whorton trying to discern what was wrong with C.O. C.O. explained her frustration with her family situation, as she felt she did not receive the love she needed from her mother. (*Id.*) During the course of this conversation, Flynn, who had been drinking alcohol, came outside repeatedly and "verbally abus[ed]" C.O. (*Id.* at 127.)

Once Whorton and C.O. returned to the apartment, C.O. grabbed Flynn's

3

phone, pronouncing that she was calling her father to ask him to retrieve her.  (*Id.* at 128, 194.)  Following a physical altercation between the two, Whorton separated the mother and daughter, and proceeded to have a conversation with Petitioner and Flynn on the subject of child abuse.  (*Id.* at 129-30.)  C.O. asked Whorton to take her to her father's house or to her grandparent's house, but Flynn refused.  (*Id.* at 130.)  Soon thereafter, Flynn informed everyone that it was late and that the party was over, as she had to work the following day.  (*Id.*)

Whorton left with his nephew D.J. and, while warming up the truck, saw C.O. screaming for help through an open window.  (*Id.* at 131, 217.)  Whorton returned to the apartment and Flynn opened the door to let him in, at which point Whorton saw C.O. with blood on her face and shirt, as well as a bloody rag.  (*Id.* at 131-32.)  Given how the evening had progressed up until that point, Whorton assumed that Flynn had hit C.O., and Whorton began yelling at Flynn.  (*Id.* at 131, 144, 197-99.)  At this point, Petitioner intervened, informing Whorton that C.O. had a condition regularly resulting in nose bleeds, that Flynn could handle it, and that it was none of Whorton's business.  (*Id.* at 132, 148-150, 269.)  Whorton and Petitioner then proceeded to get into a fist fight inside of the apartment.  Whorton candidly admitted on the witness stand that he could not recall who threw the first punch.  (*Id.* at 132-33.)

4

Although the testimony of the various witnesses varied, it appears the jury credited the testimony of those who testified that after Petitioner was knocked to the floor during her scuffle with Whorton, she stood up and retrieved a military knife from her purse.  (*Id.* at 222-24.)  Petitioner, however, maintained that she had the knife on her person, a version of events corroborated by the testimony of Flynn.[3]  In any event, Petitioner used the knife against Whorton, cutting his chest, a fact Whorton was unaware of until he departed.[4]   Once inside of his truck, Whorton felt an intense pain in his chest, at which point he realized that what he thought was a punch to the chest was actually a stabbing.  (*Id*. at 133.)

Waterford Township Police Officer Kevin Kazyak testified that at 4:30 a.m. on November 18, 2007, he responded to a call regarding an argument in a parking lot between a women and a young female.  (*Id.* at 246).  Kazyak then went to Petitioner's apartment.  Petitioner pulled the knife from her pocket and gave it to Kazyak.  When Kazyak opened the knife, it appeared as though someone had wiped it off.  (*Id.* at 253-255.)  According to Flynn, the knife used to stab Paul was

---

[3]Petitioner collected knives, swords, daggers, and throwing knives. (2/15/08 Trial Tr. 294.)  Petitioner normally carried two knives and showed the knives to people in the apartment earlier that evening because she was proud of them. (2/14/08 Trial Tr. 229-30.)

[4]At some point during the physical altercation, Whorton recognized the need to depart, and did so on his own volition.

5

a utility or pocket knife that Petitioner usually carried in her pocket.  The knife has a button that needed to be flipped to open it and a spring that had to be pulled down before it could be closed.  (*Id.* at 272; 2/15/08 Trial Tr. 292-93.)

Following the imposition of her sentence, Petitioner filed an appeal as of right in the Michigan Court of Appeals raising claims of (1) prosecutorial misconduct, (2) ineffective assistance of trial counsel, and challenging (3) various evidentiary rulings.  The state appellate court rejected each contention and affirmed Petitioner's conviction in an unpublished, per curiam opinion.  *People v. Jade*, No. 284271, 2009 WL 1693281, at *1 (Mich. Ct. App. Jun. 16, 2009) (unpublished) (per curiam).

Petitioner subsequently filed an application for leave to appeal with the Michigan Supreme Court, in which she raised the same claims she had raised below, as well as an additional claim that she had been denied her Sixth Amendment right to trial by an impartial jury, her due process right to present a complete defense, that the jury instructions permitted a conviction contrary to Michigan's self-defense statute, and that there was insufficient evidence to sustain a conviction because the prosecution failed to disprove self-defense or defense of others.  The Michigan Supreme Court denied the application, explaining that the court was not persuaded that the questions presented should be reviewed.  *People*

6

*v. Jade*, 485 Mich. 1009, 775 N.W.2d 779 (Mich. 2009).

Petitioner then filed a post-conviction motion for relief from judgment pursuant to Michigan Court Rule 6.500, *et seq.*, which the trial court denied. *People v. Jade*, No. 07-218266 (Oakland Cnty. Cir. Ct., Nov. 1, 2010), *reconsid. den.* Dec. 17, 2010. The Michigan Court of Appeals denied Petitioner leave to appeal, concluding that Petitioner had failed to establish an entitlement to relief under Michigan Court Rule 6.508(D). *People v. Jade*, No. 301976 (Mich. Ct. App. Oct. 11, 2011); *lv. den.* 492 Mich. 852, 817 N.W.2d 101 (2012).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. [Petitioner] was denied her rights to a fair trial; trial by impartial jury, and to present a complete defense under the Fifth, Sixth, and Fourteenth Amendments to the Federal Constitution where the jury was not instructed on the presumptions/conditions set forth in the self-defense act, MCL 780.951; 780.961; and 780.972 where said statutes unequivocally establish [her] innocence.

II. [Petitioner] was denied her due process right to a fair trial under the Fifth and Fourteenth Amendments to the Federal Constitution where the evidence presented was insufficient to support the conviction, and where the prosecution did not prove beyond a reasonable doubt that [Petitioner] did not act in defense of self or others in compliance with MCL 780.961.

III. [Petitioner] was denied her rights to a fair trial and trial by impartial jury under the Fifth, Sixth and Fourteenth Amendments to the Federal Constitution, where the prosecutor engaged in a pervasive pattern of misconduct designed to unfairly prejudice the defense, where the prosecutor; intentionally misled the jury by misstating the law and distracting the jurors from the facts establishing the statutory justification

7

for self-defense; injected irrelevant, immaterial matters into the proceedings; bolstered prosecution witnesses; denigrated the sole defense witness; misrepresented testimony; and argued facts not in evidence.

IV. [Petitioner] was denied her right to the effective assistance of counsel as guaranteed by the 6th and 14th Amendments to the United States Constitution and Article 1 § 20 of the Michigan Constitution 1963 when counsel ignored the critical evidence of the "MySpace Comments" made by the prosecutor's chief witness Paul Whorton. Accordingly Counsel's performance fell below and objective standard of reasonableness and but for counsel's ignoring of the critical "MySpace Comments" and/or evidence there was a reasonable probability that [Petitioner] would have been acquitted of the charge.

Following an order from the Court, Respondent Debra Scutt ("Respondent") filed an answer to the habeas petition as well as the corresponding Rule 5 materials on August 2, 2013.[5]

## II.   STANDARD OF REVIEW

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Pub. L. No. 104-132, 110 Stat. 1214. In order to grant relief, this Court must conclude that the state court's decision "with respect to any claim that was adjudicated on the merits in State court proceedings"

---

[5] Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, specifically subdivisions (c) and (d), set forth the respondent's obligation to submit state court materials related to the conviction and appeal challenged in a § 2254 proceeding.

was (1) "contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United

States[]" or (2) "based on an unreasonable determination of the facts in light of the

evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

The Supreme Court has expounded upon the meanings of the two clauses

contained in 28 U.S.C. § 2254(d)(1).  *Williams v. Taylor*, 529 U.S. 362, 405, 120

S. Ct. 1495, 1519 (2000) (O'Connor, J., opinion of the Court for Part II) ("[T]he

'contrary to' and 'unreasonable application' clauses [have] independent

meaning.").  "A state-court decision is contrary to clearly established federal law

if the state court applies a rule that contradicts the governing law set forth in [the

Supreme Court's] cases or if the state court confronts a set of facts that are

materially indistinguishable from a decision of [the Supreme] Court and

nevertheless arrives at a result different from [that] precedent."  *Murphy v. Ohio*,

551 F.3d 485, 493-94 (6th Cir. 2009) (alterations in original) (internal quotation

marks omitted) (quoting *Williams*, 529 U.S. at 405, 120 S. Ct. at 1519).

Alternatively, "[i]f the state court identifies the correct governing legal

principle . . . , habeas relief is available under the unreasonable application clause

if the state court unreasonably applies that principle to the facts of the prisoner's

case or unreasonably extends or unreasonably refuses to extend a legal principle

9

from the Supreme Court precedent to a new context." *Akins v. Easterling*, 648

F.3d 380, 385 (6th Cir. 2011) (internal quotation marks and alterations omitted).

A federal court may not find a state court's application of Supreme Court

precedent unreasonable if it is merely "incorrect or erroneous. [Rather, t]he state

court's application must have been 'objectively unreasonable.'" *See, e.g.*, *Wiggins*

*v. Smith*, 539 U.S. 510, 520-21, 123 S. Ct. 2527, 2535 (2003) (citations omitted).

"[A] federal habeas court may not issue the writ simply because that court

concludes in its independent judgment that the relevant state-court decision

applied clearly established federal law erroneously or incorrectly." *Williams*, 529

U.S. at 411, 120 S. Ct. at 1522. "Rather, it is the habeas applicant's burden to

show that the state court applied [Supreme Court precedent] to the facts of his

case in an objectively unreasonable manner." *Woodford v. Visciotti*, 537 U.S. 19,

25, 123 S. Ct. 357, 360 (2002).

Factual determinations made by state court judges in the adjudication of

claims cognizable on habeas review are accorded a presumption of correctness.

28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with

clear and convincing evidence. *Id.* Moreover, habeas review of claims

adjudicated on the merits is "limited to the record that was before the state court."

*Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011).

10

As the authority cited above makes clear, AEDPA"imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773, 130 S. Ct. 1855, 1862 (2010) (citing cases); *see also Nields v. Bradshaw*, 482 F.3d 442, 449 (6th Cir. 2007).

## III.   ANALYSIS

### A.   The Jury Instruction Claim

In her first claim, Petitioner alleges that she was denied her due process right to a fair trial because the trial court gave an erroneous self-defense instruction to the jury.  Petitioner also alleges that her trial counsel was ineffective for failing to object to the instruction, a claim that will be discussed in greater detail in Section III.D of this Opinion and Order.[6]

---

[6]Respondent contends that because Petitioner's trial counsel expressed his satisfaction with the jury instructions, (2/15/08 Trial Tr. 342-44, 348), Petitioner has forfeited this claim.  Although Petitioner did not raise her claim concerning the propriety of the trial court's instruction to the jury on direct review or present this Court with a reason as to why she failed to raise this argument on direct review (Petitioner raised the claim in the first instance in her application seeking leave to appeal from the Michigan Supreme Court), the Court will review the claim based on its recognition that the ineffective assistance of counsel claim could, theoretically, provide the requisite cause to excuse Petitioner's failure to raise the argument below.  Ultimately, the Court concludes that neither the jury instruction claim nor the ineffective assistance claim is meritorious.

11

The burden of establishing that an instructional error warrants habeas relief rests with a habeas petitioner, and the burden is a heavy one. Indeed, the burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack upon the constitutional validity of a state court conviction is even greater than the showing required in a direct appeal. The question in a collateral proceeding is not merely whether a challenged "instruction is undesirable, erroneous, or even 'universally condemned,' but [whether] it violated some right which was guaranteed . . . by the Fourteenth Amendment." *Donnelly v. DeChristofo*, 416 U.S. 637, 643, 94 S. Ct. 1868, 1871 (1974). In other words, the relevant inquiry is "whether the ailing instruction so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. 62, 72, 112 S. Ct. 475, 482 (1991) (quotation omitted). When assessing the propriety of a challenged instruction, a court must not view the instruction in isolation but rather must consider it within the context of the entire jury charge and the evidence introduced at trial. *Jones v. United States*, 527 U.S. 373, 391, 119 S. Ct. 2090, 2103 (1999). Of particular import to the instant case is the principle that an incomplete instruction is less likely to be prejudicial than an instruction that misstates the law. *Henderson v. Kibbee*, 431 U.S. 145, 154-55, 97 S. Ct. 1730, 1737 (1977). That is, any ambiguity, inconsistency or deficiency in a

12

jury instruction does not, standing alone, necessarily constitute a violation of due process. *Waddington v. Sarausad*, 555 U.S. 179, 190, 129 S. Ct. 823, 831 (2009). To warrant habeas relief, it is not enough that there might be some "slight possibility" that the jury misapplied the instruction. *Id.* at 191, 129 S. Ct. at 832.

The trial court instructed the jury on Petitioner's claim of self-defense as follows:

> [T]he defendant claims that she acted in lawful self-defense. A person has a right to defend herself under certain circumstances. If a person acts in lawful self-defense, her actions are justified and she is not guilty of assault with intent to do great bodily harm less that murder, or assault with a dangerous weapon.
>
> You should consider all of the evidence and use the following rules to decide whether the defendant acted in lawful self-defense. Remember to judge the defendant's conduct according to how the circumstances appeared to her at the time she acted.
>
> First, at the time the defendant acted, she must not have been engaged in the commission of a crime.
>
> Second, when the defendant acted, she must have honestly and reasonably believed that she had to use force to protect herself from the imminent unlawful use of force by another. If her belief was honest and reasonable, she could act at once to defend herself, even if it turns out later that she was wrong about how much danger she was in.
>
> Third, a person is only justified in using the degree of force that seems necessary at the time to protect herself from danger. The defendant must have used the kind of force that was appropriate to the attack made and the circumstances as she saw them.

13

When you decide whether the force used was what seemed necessary, you should consider whether the defendant knew about any other ways of protecting herself, but you may also consider how much excitement of the moment affected the choice the defendant made.

Fourth, the right to defend one's self only lasts as long as it seems necessary for the purpose of protection.

Fifth, the person claiming self-defense must not have acted wrongfully and brought on the assault.

The defendant does not have to prove that she acted in self-defense. Instead, the prosecutor must prove beyond a reasonable doubt that the defendant did not act in self-defense.

(2/15/08 Trial Tr. 342-44).

Petitioner raises several challenges to this instruction. First, she contends that the judge erred in failing to instruct the jurors that Petitioner had no duty to retreat before exercising her right to self-defense. Michigan Compiled Laws § 780.972, which is part of the Self-Defense Act, provides:

(1) An individual who has not or is not engaged in the commission of a crime at the time he or she uses deadly force may use deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if either of the following applies:

(a) The individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself or herself or to another individual.

14

(b) The individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent sexual assault of himself or herself or of another individual.

(2) An individual who has not or is not engaged in the commission of a crime at the time he or she uses force other than deadly force may use force other than deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if he or she honestly and reasonably believes that the use of that force is necessary to defend himself or herself or another individual from the imminent unlawful use of force by another individual.

Comparing the statutory language with the instruction given by the trial judge (and acquiesced to by Petitioner's trial counsel), it is apparent that the trial court did not mention the absence of a duty to retreat prior to the use of force. The trial judge did, however, instruct the jurors that if Petitioner honestly and reasonably believed that she had to use force to protect herself from the imminent unlawful use of force by another, "she could act at once to defend herself." This language necessarily implies that Petitioner had the right to respond with force in self-defense if her belief of imminent harm was reasonable. Under Michigan law, any error by the judge in failing to give the "no duty to retreat" instruction was harmless, where Petitioner's rights were adequately protected by the self-defense instruction that was given by the trial court. *People v. Davis*, 216 Mich. App. 47, 55, 549 N.W.2d 1, 5 (1996).

Under federal constitutional standards, this Court does not believe that the

15

lack of a duty to retreat instruction prejudiced Petitioner to such a degree that it deprived her of a fair trial. Although circuit precedent establishes that "a defendant is [generally] entitled to jury instructions on defense theories that are supported by law and raised by the evidence presented[,]" *Williams v. Kentucky*, 124 F.3d 201, 202 (6th Cir. 1997), the evidence in this case suggests that Whorton and Petitioner engaged in a scuffle inside of Flynn's apartment and that Petitioner escalated the amount of force by brandishing and *using* a weapon.[7] C.O. testified that she saw Petitioner go to her purse to retrieve the knife she used to inflict bodily injury upon Whorton after Whorton had knocked her to the ground. Further, as discussed in greater detail below, C.O. testified that she wanted to leave the apartment with Whorton. Under such circumstances, neither C.O. nor Petitioner were in imminent danger of death or serious bodily harm. The evidence did not, therefore, support Petitioner's self-defense claim. Because the evidence to support a claim of self-defense was lacking, the trial court's failure to give complete instructions on the defense of self-defense - specifically the absence of a duty to retreat - did not deprive Petitioner of her constitutional right to due process. *Allen v. Morris*, 845 F.2d 610, 616-17 (6th Cir. 1988); *Melchior v. Jago*,

---

[7] There was no evidence that Whorton, the victim, possessed a weapon or threatened to use once at any point.

16

723 F.2d 486, 493-94 (6th Cir. 1983). In other words, this Court is not persuaded that the failure to mention the lack of a duty to retreat prejudiced Petitioner, and it certainly does not believe that the omission in the jury instruction "so infected the entire trial that the resulting conviction violates due process." *Estelle*, 502 U.S. at 72, 112 S. Ct. at 482. As such, habeas relief is not warranted on this claim of error.

Petitioner next contends that the trial judge erred in failing to instruct jurors of the rebuttable presumption set forth in Michigan Compiled Laws § 780.972(1)(a), which provides that there is a presumption that a criminal defendant had "an honest and reasonable belief that . . . great bodily harm to himself or herself or another individual will occur" because "the person against whom deadly force or other than deadly force is used is in the process of . . . unlawfully attempting to remove another individual from a dwelling . . . against his or her will." Petitioner asserts that because Whorton was trying to remove C.O. from the apartment, the jury should have been instructed that there was a presumption that she believed that harm was going to be visited upon C.O. However, Petitioner's argument omits the fact that C.O. testified that she wanted to leave her mother's apartment, and, therefore, that Whorton's invitation for C.O. to leave with him was not "against [C.O.'s] will," as required by the statute's plain

17

language.  *Id.*; (2/14/08 Trial Tr. 90-91, 114-15, 131, 144-45, 197-98, 216-17.)

This testimony defeats Petitioner's claim that Whorton was endeavoring to

remove C.O. from the premises against her will.  It also defeats Petitioner's

argument that the jury should have been instructed on the statutory presumption,

as any such instruction was not supported by the evidence.  *Williams*, 124 F.3d at

202.

Lastly, to the extent that Petitioner claims that the judge's failure to give

particular instructions to the jury denied her of her right to present a defense, the

claim is lacking in merit.  While well-established that the right to present a

defense is a "fundamental element of due process[,]" *Washington v. Texas*, 388

U.S. 14, 19, 87 S. Ct. 1920, 1923 (1967), "[a] defendant's right to present a

defense is not unlimited, but rather is subject to reasonable restrictions[,]" *United*

*States v. Sheffer*, 523 U.S. 303, 308, 118 S. Ct. 1261, 1264 (1998).  Indeed, courts

are given "broad latitude under the Constitution to establish rules excluding

evidence from criminal trials" and these "rules do not abridge an accused's right

to present a defense so long as they are not 'arbitrary' or 'disproportionate to the

purposes they are designed to serve.'" *Sheffer*, 523 U.S. at 308, 118 S. Ct. at 1264.

Thus, "[o]nly if an evidentiary ruling is so egregious that it results in a denial of

fundamental fairness does it violate due process and thus warrant habeas relief."

18

*Baze v. Parker*, 371 F.3d 310, 323 (6th Cir. 2004) (internal citations and quotations omitted).

In this case, Petitioner is unable to demonstrate that she was denied the right to present a defense by the trial court's omission of any specific instruction on self-defense. This is because Petitioner did, in fact, present a self-defense defense, evidenced by the instructions given to the jury. Petitioner has not demonstrated a denial of fundamental fairness. Accordingly, habeas relief is not warranted on this claim.

**B.      Challenge to the Sufficiency of the Evidence**

In her next claim, Petitioner alleges that the prosecution did not present sufficient evidence to support a conviction for assault with intent to do great bodily harm less than murder, because the prosecution did not prove beyond a reasonable doubt that Petitioner did not act in defense of self or others. For the reasons that follow, habeas relief is not warranted on this claim.

Pursuant to Supreme Court precedent, evidence adduced at trial is sufficient to support a conviction whenever, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). This standard must be applied

19

"with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 324 n.16, 99 S. Ct. at 2792 n.16. "It is the province of the fact-finder to weigh the probative value of the evidence and resolve any conflicts in testimony[,]" not that of a reviewing court. *Matthews v. Abramajtys*, 319 F.3d 780, 788-89 (6th Cir. 2003). "*Jackson* leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial . . . . This deferential standard does not permit . . . fine-grained factual parsing." *Coleman v. Johnson*, 132 S. Ct. 2060, 2064 (2012) (citations and internal quotation marks omitted). Sufficiency-of-the-evidence challenges raised in federal courts on habeas review are subject to a more stringent standard. As framed by AEDPA, the issue is whether the state courts unreasonably applied *Jackson* to the facts of Petitioner's case. "[A] state-court decision rejecting a sufficiency challenge may not be overturned on federal habeas unless the 'decision was "objectively unreasonable."'" *Parker v. Matthews*, 132 S. Ct. 2148, 2152 (2012) (quoting *Cavazos v. Smith*, 132 S. Ct. 2, 3 (2011) (per curiam)). Given the procedural posture of this case, "the law . . . commands deference at two levels . . . first, to the jury's verdict as contemplated by *Jackson*, and, second, to the state court's consideration of the jury's verdict as dictated by AEDPA." *Parker v. Renico*, 506 F.3d 444, 448 (6th Cir. 2007).

20

In the State of Michigan, self-defense and defense of others are affirmative defenses. *See, e.g.*, *People v. Dupree*, 486 Mich. 693, 704, 712, 788 N.W. 2d 399 (2010). "An affirmative defense . . . 'admits the crime but seeks to excuse or justify its commission. It does not negate specific elements of the crime.'" *People v. Reese*, 491 Mich. 127, 155 n.76, 815 N.W.2d 85 (2012) (quotation omitted). Although Michigan law places the burden of disproving a claim of self-defense or defense of others on the prosecution, *People v. Watts*, 61 Mich. App. 309, 311, 232 N.W.2d 396 (1975), "[p]roof of the nonexistence of all affirmative defenses has never been constitutionally required[,]" *Smith v. United States*, 133 S. Ct. 714, 719 (2013) (quoting *Patterson v. New York*, 432 U.S. 197, 210, 97 S. Ct. 2319, 2327 (1977)). Both the Supreme Court and the Sixth Circuit have rejected the argument that the Constitution requires the prosecution to disprove self-defense beyond a reasonable doubt. *Gilmore v. Taylor*, 508 U.S. 333, 359, 113 S. Ct. 2112, 2126-27 (1993) (Blackmun, J., dissenting) ("In those States in which self-defense is an affirmative defense to murder, the Constitution does not require that the prosecution disprove self-defense beyond a reasonable doubt"); *Martin v. Ohio*, 480 U.S. 228, 233-36, 107 S. Ct. 1098, 1102 (1987); *see also Allen v. Redman*, 858 F.2d 1194, 1197 (6th Cir. 1988) (explaining that habeas review of sufficiency-of-the-evidence claims is limited to elements of the crimes as defined

21

by state law) (citations omitted). Therefore, "the due process 'sufficient evidence' guarantee does not implicate affirmative defenses, because proof supportive of an affirmative defense cannot detract from proof beyond a reasonable doubt that the accused had committed the requisite elements of the crime." *Caldwell v. Russell*, 181 F.3d 731, 740 (6th Cir. 1999), *overruled on other grounds by Lindh v. Murphy*, 521 U.S. 320, 117 S. Ct. 2059 (1997).

Petitioner does not challenge the sufficiency of the evidence in support of the essential state law elements of assault with intent to do great bodily harm less than murder; rather, "[she] has only faulted the jury's refusal to credit [her] proffered affirmative excuse or justification" for the stabbing. *Caldwell*, 181 F.3d at 740. As such, Petitioner's claim that the prosecutor failed to disprove her affirmative defense does not state a valid claim for federal habeas relief, as such relief requires that there be a violation of the federal constitution or federal law. *Id.*; *Allen*, 858 F.2d at 1200.

## C.     Claims of Prosecutorial Misconduct

Petitioner next contends that she was denied a fair trial because of various instances of prosecutorial misconduct. Each claim of error was rejected by the Michigan Court of Appeals on direct review.

"When a [habeas] petitioner makes a claim of prosecutorial misconduct, 'the

22

touchstone of the due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor.'" *Serra v. Mich. Dep't of Corrs.*, 4 F.3d 1348, 1355 (6th Cir. 1993) (quoting *Smith v. Phillips*, 455 U.S. 209, 219, 102 S. Ct. 940, 947 (1982)).  On habeas review, the role of the reviewing court "is to determine whether the conduct was 'so egregious as to render the entire trial fundamentally unfair.'"  *Id.* (quoting *Cook v. Bordenkircher*, 602 F.2d 117, 119 (6th Cir. 1979)). This requires a court to make a threshold determination of whether the challenged statements by the prosecutor were improper.  *Boyle v. Million*, 201 F.3d 711, 717 (6th Cir. 2000) (citations omitted).  If so, a reviewing court must then proceed to examine whether the statements were so flagrant as to constitute a denial of due process, thus warranting a grant of the writ.  *Id.*  This examination entails consideration of the degree to which the challenged remarks had a tendency to mislead the jury and to prejudice the accused, whether they were isolated or extensive, whether they were deliberately or accidentally placed before the jury, and, except in the sentencing phase of a capital murder case, the strength of the competent proof against the accused.  *Serra*, 4 F.3d at 1355-56.

Petitioner first contends that the prosecutor misstated the law when he suggested that Petitioner had a duty to retreat.  As mentioned when discussing Petitioner's claim of instructional error, there was little evidence to support

23

Petitioner's invocation of self-defense.  Thus, this Court is unable to conclude that any improper remarks by the prosecutor suggesting the existence of a duty to retreat had a substantial and injurious effect or influence on the jury's decision. *Johnson v. Hofbauer*, 159 F. Supp. 2d 582, 603 (E.D. Mich. 2001).

Petitioner next claims that the prosecutor "twisted the law" or "distracted" the jurors from the law of self-defense.  It is well-established that a prosecutor may argue reasonable inferences from the evidence.  *Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000).  Indeed, a prosecutor has the right to "argue the record, highlight the inconsistencies or inadequacies of the defense, and forcefully assert reasonable inferences from the evidence."  *Bates v. Bell*, 402 F.3d 635, 646 (6th Cir. 2005).  In the present case, the prosecutor argued that Petitioner was not justified in stabbing Whorton and that her actions were unreasonable in light of the amount of force that Whorton had exerted against Petitioner. (2/15/08 Trial Tr. 308-09, 328-30.)  The prosecutor's questions and argument were proper to rebut Petitioner's self-defense claim.

Petitioner next contends that the prosecutor improperly asked Petitioner about the color of the knife blade she used to stab the victim with and the origin of her transition name (Mara Jade).  When the prosecutor asked these questions, defense counsel objected and the judge sustained the objections. (*Id.* at 294, 298.)

24

Petitioner also contends that the prosecutor improperly argued in closing argument that Petitioner hated men.  The judge sustained an objection to this argument. (*Id.* at 330-31.)  Because the trial judge quickly sustained defense counsel's objections to these questions and comments, this Court is unable to discern how Petitioner was deprived of a fair trial. *United States v. Galloway*, 316 F.3d 624, 633 (6th Cir. 2003).

Further, the judge instructed the jury that questions and arguments from the prosecutor are not evidence, and it was only to base its verdict solely on the evidence. (*Id.* at 335-36.)  The trial judge also instructed the jurors to ignore any evidence that he had stricken from the record.  (*Id.* at 337.)  Jurors are presumed to follow the trial court's instructions.  *See Penry v. Johnson*, 532 U.S. 782, 799, 121 S. Ct. 1910, 1922 (2001) (citing *Richardson v. Marsh*, 481 U.S. 200, 211, 107 S. Ct. 1702, 1709 (1987)); *United States v. Powell*, 469 U.S. 57, 66, 105 S. Ct. 471, 477 (1984) ("Jurors . . . take an oath to follow the law as charged, and they are expected to follow it.").

Petitioner next contends that the prosecutor expressed a personal opinion as to Petitioner's guilt throughout the trial.

It is well-settled that it is improper for a prosecutor to express his or her own personal opinions as to a witness's credibility or on the subject of a defendant's

25

guilt. *United States v. Young*, 470 U.S. 1, 9-10, 105 S. Ct. 1038, 1043 (1985); *Hodge v. Hurley*, 426 F.3d 368, 378 (6th Cir. 2005). Such statements are improper because they convey the impression that the prosecutor has evidence not presented to the jury that supports the charges, thereby infringing upon the defendant's right to be judged solely based upon the evidence presented. *Caldwell*, 181 F.3d at 737 (comments by prosecution implying personal knowledge on the subject of guilt or vouching for the veracity of a witness by the prosecution "improperly invit[es] the jurors to convict the defendant on a basis other than a neutral independent assessment of the record proof"). Statements of this sort are also improper because the prosecutor's opinion carries with it the imprimatur of the government and may induce the jury to trust the government's judgment rather than its own. *Young*, 470 U.S. at 18-19, 105 S. Ct. at 1048; *Cristini v. McKee*, 526 F.3d 888, 901 (6th Cir. 2008); *see also Wilson v. Bell*, 368 F. App'x 627, 633 (6th Cir. 2010) (citing cases). A prosecutor is, however, free to argue that the jury should arrive at a particular conclusion based upon record evidence. *Caldwell*, 181 F.3d at 737.

The prosecutor did not offer a personal opinion as to Petitioner's guilt because his comments were based on the record evidence and did not invite the jurors to convict on anything other than the evidence presented. Petitioner is not entitled to relief on her third claim, as she has failed to establish that the prosecutor

engaged in misconduct that rendered her trial fundamentally unfair.

## D.      Ineffective Assistance of Counsel

Petitioner lastly contends she was denied the effective assistance of trial counsel.

In order to establish ineffective assistance of counsel, a habeas petitioner must show "that counsel's performance was deficient . . . [and] that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984).  In determining whether counsel's performance was deficient,

> [t]he court must . . . determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance . . . . At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Id.* at 690, 104 S. Ct. at 2066.  Therefore, judicial scrutiny of counsel's performance must be "highly deferential."  *Id*. at 689, 104 S. Ct. at 2065.  As to the issue of prejudice, counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal.  A petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id*. at 694, 102 S. Ct. at 2068.  A reasonable probability is one that is sufficient to undermine confidence in the

27

outcome. *Id*.

The Supreme Court has confirmed that a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance. "The standards created by Strickland and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington v. Richter*, 562 U.S. 86, 105, 131 S. Ct. 770, 788 (2011) (internal and end citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*.

As part of her first claim, Petitioner contends that trial counsel was ineffective for failing to object to the trial court's inadequate and incomplete instruction on self-defense. However, because the instructions as given on self-defense were adequate, counsel's failure to object was not objectively unreasonable, and Petitioner cannot show that a different instruction would likely have changed the outcome of her trial so as to entitle her to habeas relief on her claim. *Jacobs v. Sherman,* 301 F. App'x 463, 466-67 (6th Cir. 2008).

In her fourth claim, Petitioner contends that trial counsel was ineffective for

28

failing to present evidence of a MySpace.com conversation between C.O. and Whorton that tended to support her theory that the two conspired to put Petitioner in prison. The alleged MySpace.com conversation, which is between people who are not identified by name, does not indicate a conspiracy between anyone to falsely accuse Petitioner of crime. Assuming the post was written by Wharton, he merely hopes that C.O. is "safe now" and that he was not expecting to be stabbed that night. Although the person who purports to be Wharton suggests that the person purporting to be C.O. owes him fifty dollars, there is no indication that this was part of a conspiracy to frame Petitioner.

Defense counsel has no obligation to present evidence or testimony that would not have exculpated the defendant. *Millender v. Adams*, 376 F.3d 520, 527 (6th Cir. 2004) (internal quotation omitted). Counsel was not ineffective in failing to present the MySpace.com conversation to the jury, because this evidence would have offered, at best, only marginal support for Petitioner's self-defense claim. *See, e.g.*, *Hofbauer*, 159 F. Supp. 2d at 607. Petitioner is not entitled to relief on her claim of ineffective assistance of counsel.

## IV. CERTIFICATE OF APPEALABILITY

Petitioner may not appeal the Court's denial of her habeas petition unless a district or circuit judge issues a certificate of appealability. 28 U.S.C. §

29

2253(c)(1)(A). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327, 123 S. Ct. 1029, 1034 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 1604 (2000)). Where, as here, "a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484, 120 S. Ct. at 1604.

Having conducted the requisite inquiry, the Court concludes that reasonable jurists would not debate the Court's assessment of Petitioner's claims, nor conclude that the issues deserve encouragement to proceed further. The Court therefore declines to issue a certificate of appealability.

## V.   CONCLUSION AND ORDER

For the reasons stated, the Court concludes that Petitioner has failed to demonstrate that she is entitled to the relief she seeks in her petition for writ of

habeas corpus.

Accordingly,

**IT IS ORDERED** that the petition for writ of habeas corpus is **DENIED**

and a certificate of appealability **SHALL NOT** issue.

Dated: October 27, 2015


sPATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

**Copies to:**

**Mara Katlyn Jade**
5305 Ridge Trail
Clarkston, MI 48348

**Andrea M. Christensen-Brown, AAG**
**Laura Moody, AAG**